**Aaron HOLT, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 779S181.**

Supreme Court of Indiana.

Aug. 19, 1980.

Nile Stanton, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant, Aaron Holt, Jr., was convicted after a trial by jury of first degree murder. A sentence of life imprisonment was imposed on May 27, 1975. The conviction was affirmed on direct appeal to this Court in *Holt v. State*, (1977) 266 Ind. 586, 365 N.E.2d 1209. (DeBruler, J., dissenting)

Thereafter appellant filed a petition for post-conviction relief seeking a new trial because of alleged violation of the Fourteenth Amendment, prosecutorial misconduct, and denial of adequate representation by counsel. A hearing on the petition resulted in findings and conclusions of law against petitioner. This appeal has followed.

This case originally grew out of the shooting death of Marcia Level. On the day of the death Richard Taylor was in debt to appellant in the sum of twenty dollars. Appellant arrived at his home to find the door broken down and his television and sound equipment stolen. He took a .22 target pistol and in anger shot two or three times at the battered door. He then saw Richard Taylor sitting in a car on the street. Marcia Level and Patricia Holt were passengers in the front seat of the car, and Taylor was in the driver's seat. Appellant, with gun in hand approached Taylor and demanded payment of the debt, which was refused. Appellant through the window and then through the door of the car began to strike Taylor about the head with the pistol. Appellant cocked the hammer of the pistol back and said, "I'm going to kill you." While striking him the pistol discharged and the bullet struck Marcia Level in the temple killing her. Taylor then gave appellant the twenty dollars, and it was then discovered that Level had been shot.

Taylor proceeded to the hospital with Marcia Level, and appellant ran to another person's house. Within a short time, according to the testimony of the arresting officer, he and another were proceeding to appellant's mother's home when they saw him riding down the street in the back of a car. They stopped the car and arrested appellant. He stated that he was proceeding to the police station to turn himself in. The officer testified that he was being driven in the car by a local bail bondsman. According to appellant's trial version of the events he was also accompanied by his sister at that point.

According to the testimony of the detective in charge, appellant fully cooperated with the police at all times and gave a complete statement. In this statement appellant contended that he had not intended to kill Taylor, but only to pistol whip him; and that he had said at the time "I'm going to whip you". In this statement appellant said that two acquaintances of his, Coleman and Campbell, may have been at the scene of the shooting when it occurred.

At the original trial appellant's sister, Coleman, and Campbell were not called as

witnesses by the State or by the defense. On cross-examination of appellant at that trial the prosecutor challenged him by asking why, if those witnesses could offer testimony supportive of appellant, he had not called these persons as witnesses in his behalf. *No objections were made by defense counsel to these questions.* In response to these questions appellant explained that his sister was in San Francisco and suffering from cancer. When asked why he did not call Coleman and Campbell appellant replied:

"Well, like I said, I gave a statement and I figured the detectives would have everybody here that was out there."

He also responded that Coleman was doing time somewhere in a federal penitentiary. Appellant was also asked if he could not have had the bondsman who was in the car with him when arrested in court to testify. Appellant responded:

"No. I could not. I couldn't get a hold of him."

During final summation the trial prosecutor again took up the subject of the failure of the defense to call these witnesses. While defense counsel made specific objections to other phases of the prosecutor's argument *he posed no objection to the statements on this subject.* Defense counsel did choose, however, to respond to these statements in his final argument. He recalled for the jury that appellant had told his whole story to the detective in charge and in it had revealed the names of these witnesses.

"It's not the number of witnesses produced by one side, as the prosecutor mentioned, why didn't you call John Smith and what have you. He told Detective Dunn at the time it happened who was there. And I imagine, had Detective Dunn investigated them—if he did nor didn't we don't know. I would presume that the story must have corroborated the defendant's or else he would have brought them in here and said, 'I heard him say everything out in the street that they said he did.' You see, the principle of law that we tried to explain to you is

that the burden of proof is not on the defendant, as the prosecutor would have you believe by his closing arguments. But he says let him prove his innocence and not prove his guilt, which is a complete shift, Mr. Back [trial prosecutor] of the law as it ought to be."

At another point in the argument defense counsel referred to the absent witnesses as witnesses belonging to the State and not the defense. At yet another he called for the jury to base their decision strictly upon the evidence presented at trial.

■ Appellant contended in his post-conviction proceeding that the trial prosecutor engaged in misconduct denying him due process of law in asking appellant why he had not called the witnesses and in later taking that subject up and pressing it in final argument. We do not reach the merits of this claim as no objections were made to the questioning or the final argument at a point when the trial judge might have stopped it and might have corrected any misimpressions resulting from it. The State raised the issue of waiver in the post-conviction hearing and received a favorable conclusion of law on that basis. The prosecutorial misconduct issue was not available for direct review in appellant's first and direct appeal or for direct consideration as grounds for post-conviction relief. *Langley v. State,* (1971) 256 Ind. 199, 267 N.E.2d 538; *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843; *Craig v. State,* (1977) 267 Ind. 359, 370 N.E.2d 889.

■ Appellant has also challenged the trial court's conclusion that appellant was not denied adequate aid of counsel in his original trial. It is appellant's contention that defense counsel's failure to post objections to the misconduct of the prosecutor in cross-examining appellant about absent witnesses and arguing the point in final summation shows his inadequacy. In *Magley v. State,* (1975) 263 Ind. 618, 335 N.E.2d 811, we discussed the general approach to dealing with issues of this sort:

"Counsel is presumed to have prepared and executed his client's defense effectively. *State v. Irvin* (1973), 259 Ind. 610,

291 N.E.2d 70; *Robbins v. State* (1971), 257 Ind. 273, 274 N.E.2d 255. This presumption is rationally grounded in the educational and other requirements for admission to the practice of law, but is rebuttable by strong and convincing proof. *Robbins v. State, supra.* In resolving the issue, a court should consider the totality of the circumstances surrounding counsel's pre-trial preparation and the actual conduct of the trial. *Lowe v. State* (1973), 260 Ind. 610, 298 N.E.2d 42; *Blackburn v. State* (1973), 260 Ind. 5, 291 N.E.2d 686; *Sargeant v. State* (1973), 257 Ind.App. 173, 299 N.E.2d 219. Perfunctory representation is not enough. *Wilson v. State* (1943), 222 Ind. 63, 51 N.E.2d 848; *Castro v. State* (1925), 196 Ind. 385, 147 N.E. 321. Counsel must have reasonable time for pre-trial preparation. *Hartman v. State* (1973), 155 Ind. App. 199, 292 N.E.2d 293. Deliberate choices made by counsel for some contemplated tactical or strategic reason which turn out to be detrimental to the client's cause do not establish ineffective representation. *Henry v. Mississippi* (1965), 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; *Lowe v. State, supra.*" 263 Ind. at 621, 335 N.E.2d at 814.

The record reveals that appellant's trial counsel, Mr. Robert Mann, has been disbarred since the trial. This fact does not alter the manner in which we deal with this issue.

Shortly after appellant's arrest defense counsel entered the case and advised appellant not to sign or make further statements to the police. He procured a reduction in bond to $7500 although the charge was first degree murder. He filed a motion for discovery and a motion to dismiss. A challenge to the jury array on the basis of the manner of selection was prosecuted. Counsel submitted suggested preliminary and final jury instructions. The record shows many instances in which counsel objected to evidence and made cogent arguments to the court in support thereof. He cross-examined State's witnesses in appropriate depth. He correctly perceived the burden of the State in a "transferred intent" case and sought to exploit the weaknesses in the State's case.

With regard to defense counsel's failure to object to the cross-examination and final argument on absent witnesses, it is evident that he chose to deal with this prosecution tactic in a practical manner at trial. His client had a simple and reasonable explanation for not having the witnesses in court. The State had no such grounds for its inaction. He in effect turned the State's own argument against it by pointing out that those eyewitnesses were known to the police through appellant's own voluntary revelations and that those witnesses were as available to the prosecution as they were to the defense. Since the police have extensive manpower and expertise in criminal investigation, it was effectively posited in final summation on behalf of the defense that any inference arising from the absence of those witnesses should be against the State and not the defense, i.e., that those witnesses would support the defense version of events, and not the prosecution version. This was a skilled and professional tactic. Assuming, without deciding, that a valid legal objection could have been made to the alleged misconduct of the prosecutor, it is clear beyond doubt that the failure to do so cannot support the conclusion that appellant was not provided with adequate and effective representation. Appellant actually received highly satisfactory representation.

The decision of the post-conviction court is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.