Carol J. SMITH, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 382S88.

Supreme Court of Indiana.

Nov. 4, 1983.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Carol J. Smith, was convicted by a jury of conspiracy to commit murder, Ind.Code § 35–41–5–2 (Burns 1979 Repl.) and murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.). She was sentenced to the Indiana Department of Correction for two consecutive terms of forty years and raises the following eight issues in this direct appeal.

1. Whether there was sufficient evidence to sustain the convictions;

2. Whether the trial court erred in refusing to grant defendant a new trial on the basis of the allegedly perjured testimony of a state's witness;

3. Whether a new trial is required due to the failure of the state to disclose certain statements made by one witness during a polygraph examination;

4. Whether the court erred in admitting into evidence certain photographs depicting the scene of the crime and a fraudulent marriage license;

5. Whether the court erred in refusing to allow one of the defense witnesses to testify and in excluding some testimony from another defense witness;

6. Whether certain remarks made by the prosecutor during his closing argument were so prejudicial as to require a new trial;

7. Whether the trial court erred in refusing to allow surrebuttal testimony and in refusing to permit cross-examination of one defense witness concerning false testimony she gave in another case; and

8. Whether the trial court erred in sentencing defendant on both counts.

A summary of the facts from the record most favorable to the state shows that during February of 1980, defendant made plans

to kill the man she was living with, James Furnish. She discussed these plans with her daughter's boyfriend, Willie Keown. She told Keown that she wanted to kill Furnish because he was beating up on her and one daughter, Candy, and that he had threatened to kill her. She also told Keown that Furnish had raped her other daughter, Dove Annette Smith, whom Keown was dating at that time. Defendant promised Keown a place to live, a car, and some of the insurance money if he helped her kill Furnish.

On February 24, 1980, there was an argument between defendant and Furnish. Furnish threatened to kill defendant and her daughters, and the police were eventually called. After this, defendant and her daughters temporarily moved out of Furnish's house. There were further discussions between defendant and Keown about the planned murder, and defendant gave Keown some money to purchase a gun. Keown bought a rifle from a friend and, eventually, the night of March 14, 1980, was chosen to commit the crime.

On that night, defendant led Keown to the bar where Furnish was employed. She told Keown to wait outside until she came out with Furnish for she would keep Furnish in the bar until after it was closed and everyone else was gone. This plan was carried out as Keown shot Furnish when he and defendant later came out of the bar. Furnish died from the single gunshot wound. Defendant helped Keown obtain a job after the shooting. Other evidence showed that defendant had attempted to procure aid in killing Furnish on two prior occasions and that she had obtained a fraudulent marriage certificate and used it in an attempt to obtain Furnish's workmen's compensation benefits. In July of 1980, Keown told police of the murder while he was in jail on another charge. Both Keown and defendant's daughter, Dove Annette, testified at defendant's trial pursuant to plea bargains. Several months after the trial, Keown signed an affidavit recanting his trial testimony.

Defendant denied any involvement in either the conspiracy or the murder and said she did not discuss any plans with anyone. She said that she went to the bar on the night of the murder to help Furnish and did not know she was followed. She testified that the fraudulent marriage certificate was obtained to keep Furnish's ex-wife from taking all his property. Defendant's daughter, Candy Smith, testified that she heard Keown and Dove Annette planning to kill Furnish. She said Keown threatened to kill her if she told anyone.

## I.

 Defendant first argues that the evidence presented at trial was insufficient to sustain the jury's verdict and that the verdict is therefore contrary to law. She specifically alleges that there was not sufficient evidence to establish that she participated in the conspiracy, formed an agreement with Keown, aided in the murder, or had the requisite intent. Defendant acknowledges our well settled standard for reviewing sufficiency claims; on appeal the reviewing court does not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Rowan v. State*, (1982) Ind., 431 N.E.2d 805; *Wofford v. State*, (1979) 271 Ind. 518, 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. On review this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Parks v. State*, (1979) 270 Ind. 689, 389 N.E.2d 286. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely upon circumstantial evidence. *Thompson v. State*, (1982) Ind., 441 N.E.2d 192; *Harris v. State*, (1981) Ind., 425

N.E.2d 112; *Webster v. State,* (1978) 270 Ind. 145, 383 N.E.2d 328.

In this case, defendant argues that the only witnesses who claimed to have direct knowledge of the alleged conspiracy were her daughter and her alleged co-conspirator, Keown. She claims that these witnesses were both unreliable as they were testifying in exchange for plea bargains with the state. She also points out that her daughter admitted that she committed perjury in an unrelated criminal trial and that after the instant trial, Keown recanted his trial testimony in a sworn affidavit. She contends that the testimony of these witnesses was so dubious and unreliable that it could not satisfy the standard of proof beyond a reasonable doubt. We do not agree.

██ This Court has consistently held that the uncorroborated testimony of an accomplice is sufficient to support a conviction. *Taylor v. State,* (1981) Ind., 425 N.E.2d 141; *Walker v. State,* (1980) Ind., 409 N.E.2d 626; *Kilgore v. State,* (1979) 271 Ind. 257, 391 N.E.2d 820. We have stated that the essence of the offense of conspiracy is an agreement between two or more persons to commit a felony, with intent to commit the felony, and an overt act in furtherance of the agreement. *Taylor v. State,* 425 N.E.2d at 143; *Ridgeway v. State,* (1981) Ind.App., 422 N.E.2d 410.

██ Here, Keown testified that while he was dating defendant's daughter, defendant made plans with him about killing Furnish. He testified that defendant provided money for him to buy a gun and led him to the location of the bar where Furnish worked. After the shooting Keown started to drive his truck back to defendant's house, but he ran out of gas, left the truck, and walked the rest of the way. Later, defendant gave him money to get gas for the truck. Keown threw the murder weapon in a creek while he was returning the truck to defendant's house. Later, defendant helped Keown obtain a job.

Defendant's daughter, Dove Annette Smith, testified at the trial that her mother had conspired with Keown to kill Furnish.

She corroborated Keown's statements that defendant had given him money to buy a gun and had led him to the bar on the night of the crime. She also testified that defendant, prior to the shooting, was seeing another man and that defendant thought Furnish was seeing another woman. Two other witnesses testified that defendant had tried to involve them in plans to kill Furnish, prior to the conspiracy with Keown.

The testimony of Keown is sufficient to establish an agreement between defendant and Keown to murder Furnish. The testimony demonstrates that overt acts were taken to carry out the conspiracy and that defendant had the intent to kill Furnish and participated in the actual murder by leading Keown to the location of the murder. Keown's testimony was corroborated by the testimony of defendant's daughter.

Although we have, in a few cases, determined that the evidence was insufficient because the only incriminating evidence was inherently unbelievable, we do not find this to be such a case. The jury was aware of the benefits given to the witnesses in exchange for their testimony and their relationship to defendant. The credibility of these witnesses was to be judged by the trier of facts, and we cannot say that a reasonable man could not believe the witnesses' testimony to be true. There was sufficient evidence to establish the conspiracy and defendant's participation in it.

Defendant further argues that there was not sufficient evidence of the requisite intent to support her conviction for murder. She points to testimony about her actions immediately after the shooting to support this claim. One witness testified that he was a passenger in a car passing the scene of the crime. He heard a gunshot and saw a man in front of the doorway of the bar fall to the ground. He saw defendant standing by a car to the west of the bar. When the car in which he was riding turned around, he saw defendant waiving her arms to attract attention and then going to a phone booth. These actions of defendant do not necessarily prove that she was not a participant in the murder as they are also

consistent with the theory that she was attempting to draw suspicion away from her. She was not seen to approach the body of Furnish to render him any aid, nor was she observed attempting to take cover for her own safety.

While it is true that mere presence at the scene of a crime is not sufficient evidence to permit an inference of participation, *Bond v. State,* (1971) 257 Ind. 95, 272 N.E.2d 460, there was substantial evidence here, as detailed above, of defendant's intent to kill Furnish and participation in the actual murder. As long as the evidence and the inferences which may be drawn therefrom permit a reasonable trier of fact to find the existence of each element of the crimes charged beyond a reasonable doubt, the convictions will stand. *Robinson v. State,* (1977) 266 Ind. 604, 365 N.E.2d 1218. The evidence in this case adequately supports the convictions for conspiracy and murder.

## II.

Defendant next argues that the affidavit of Willie Keown which was submitted to the trial court with her motion to correct error proves that she was convicted upon perjured testimony and, therefore, that she is entitled to a new trial. Keown's affidavit was executed on October 23, 1981, approximately ten months after defendant's trial. In the affidavit, Keown recants his trial testimony and claims he testified falsely at the trial and that neither he nor defendant was involved in the shooting. However, it is well settled that the discovery, after trial, of information that might possibly have been useful to the defense does not automatically result in a new trial. The party requesting a new trial must show that the newly discovered evidence meets several requirements including the fact that it is worthy of credit, due diligence was used to discover it in time for trial, and that it will probably produce a different result upon a second trial. *Harden v. State,* (1982) Ind., 441 N.E.2d 215; *Tessely v. State,* (1978) 267 Ind. 445, 370 N.E.2d 907.

Defendant argues that the case of *Deatrick v. State,* (1979) Ind.App., 392 N.E.2d 498, is similar to her situation and means she should be granted a new trial. We disagree. In *Deatrick,* there was evidence of the knowing use of false testimony by the prosecution as well as a failure by the state to provide discovery requested by the defendant. In the instant case, there is no claim that the prosecution was aware of false testimony on the part of Keown. Here Keown's trial testimony was, of course, given in exchange for a plea agreement, and the terms of this agreement had been carried out by the time he executed his affidavit, so he had nothing to lose in changing his trial story. Moreover, Keown had sworn to the original version of the crime two times, at defendant's trial and at his plea hearing. He had consistently given the same facts to police officers five times during the investigation of this case. Finally, his original version of the crime was corroborated in most respects by other witnesses. Under these circumstances, the trial court was justified in determining that the affidavit was of insufficient credibility to affect the result of a new trial.

A motion for a new trial predicated on newly discovered evidence is viewed with disfavor, and the denial of the motion will be reversed only if the trial court exceeded his discretion in concluding that a different result upon retrial would not have been possible. *Hicks v. State,* (1981) Ind., 426 N.E.2d 411; *Helton v. State,* (1980) Ind., 402 N.E.2d 1263. Here, Keown's affidavit was only impeaching evidence. The trial court did not err in denying a new trial under these circumstances.

## III.

Defendant next contends that she should be granted a new trial because the prosecution did not fully comply with the trial court's discovery orders. She specifically argues that the state did not give her a copy of the statements Keown made during a polygraph examination nor the results of the polygraph examination, although she

had filed a broad discovery order requesting copies of all written or oral statements made by any witnesses in the case. At the hearing on the motion to correct error, there was evidence that the polygraph examination had been given to Keown as the state was beginning its investigation of the case to help the state determine whether or not there was any validity at all to Keown's testimony. The results of the polygraph indicated that Keown was telling the truth about the conspiracy with defendant and the shooting of Furnish. However, the test results also indicated that he might not be truthful in his statements about where he disposed of the murder weapon and where he got the money to buy it. He was extensively questioned about these discrepancies by the police, but continued to maintain his original story during the trial.

It is true that the prosecution has a duty to provide the accused with material, exculpatory evidence. *Birkla v. State,* (1975) 263 Ind. 37, 323 N.E.2d 645. However, we have also held that results of polygraph examinations are inadmissible, absent stipulations by both parties, and that there is no error in the state's failure to disclose those results. *Zupp v. State,* (1972) 258 Ind. 625, 283 N.E.2d 540.

Under the circumstances of this case, the results of the polygraph examination could not be exculpatory. The major part of Keown's testimony about defendant's involvement in the conspiracy and the murder was supported by the polygraph results. The two possible discrepancies could not be used as impeaching evidence since any mention of the polygraph results or any reference to a polygraph examination was inadmissible. Defendant is not entitled to a new trial here since the results of the polygraph examination were inadmissible and would not have aided her in the preparation of her defense. As we stated in *Zupp v. State,* 258 Ind. at 631, 283 N.E.2d at 543, "Our leadership in the area of discovery in criminal cases in no way indicates that we would extend it into areas that would be unlikely to produce worthwhile results."

IV.

Defendant next contends that the trial court erred in admitting into evidence five photographs depicting the victim at the scene of the crime. Defendant claims these photographs are cumulative and prejudicial since autopsy photographs were used to demonstrate the nature of the wounds and, at the time the complained of photographs were taken, the victim had been slightly moved and his clothing disarranged by the emergency medical technicians who had attempted to treat him.

This Court has consistently held that trial courts have wide discretion in determining the admissibility of photographic evidence. The test to be applied is whether or not the photographs are relevant to any material issue in the case determined by inquiry as to whether a witness would be permitted to describe verbally the subject of the photographs. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805; *Rogers v. State,* (1979) 270 Ind. 189, 383 N.E.2d 1035; *Brandon v. State,* (1978) 268 Ind. 150, 374 N.E.2d 504.

Here, the police officer testified that the photographs accurately represented the scene of the crime, the victim, and the victim's wounds as he observed them upon his arrival on the scene. Three of the photographs show the position of the victim's body from different angles and show different background areas of the scene. They are not unnecessarily gruesome. While the other two photographs do portray close-up views of the victim's body and wounds, they portray different views of the body and clearly are relevant to show the condition of the victim when the police arrived. While they are necessarily gruesome, we do not find them unduly prejudicial; there was no abuse of discretion here.

Defendant also alleges the trial court erred in admitting into evidence a fraudulent marriage certificate contained in the files of the Great American Insurance Company. She alleges that the document is irrelevant and does not meet the criteria for

admission under the business records exception of the hearsay rule. We disagree.

■ The document was sufficiently connected to defendant to demonstrate its relevance and was shown to be an ordinary business record. An employee of the Great American Insurance Company, Mr. Bonham, testified that he became the workmen's compensation claims manager for that company in May, 1981. He testified that he was responsible for the file already established for the victim, Mr. Furnish. He also testified that the normal course of business in a workmen's compensation death claim was for the company to request proof of legal dependency such as a marriage certificate in the case of a claim by a widow. The document in this case was a purported marriage certificate between James Franklin Furnish and Carol Jean Smith. The file also contained a memo stating that a claimant who called herself Carol Furnish had contacted the company about a death benefit claim and said she would obtain a notarized copy of her marriage license to support her claim. Another memo in the file established that the marriage license had been received in the course of business. This evidence clearly demonstrates that the marriage license was received by the insurance company in the normal course of business, was the kind of record kept in the normal course of business, and was placed in the company file by one who had personal knowledge of the transaction represented at the time of the entry and who was authorized to place the entry in the company's records. It meets our requirements for the business records exception to the hearsay rule. *Darnell v. State,* (1982) Ind., 435 N.E.2d 250; *Thompson v. State,* (1979) 270 Ind. 442, 386 N.E.2d 682; *Jones v. State,* (1977) 267 Ind. 205, 369 N.E.2d 418.

■ This Court has held that the trial court is accorded wide latitude in ruling on the relevancy of evidence. Evidence is relevant if it is material to an issue in the case and tends to make a desired inference more probable. *Turpin v. State,* (1980) 272 Ind. 629, 400 N.E.2d 1119; *Williams v.*

*State,* (1979) 270 Ind. 573, 387 N.E.2d 1317; *Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233. A claim for benefits of over forty-four thousand dollars was relevant to establish a motive for the victim's murder. Defendant did not deny that she had obtained a fraudulent marriage license, although she claimed it was obtained to keep the victim's ex-wife from collecting social security benefits and was not submitted to the Great American Insurance Company. The fraudulent marriage certificate was relevant as to the motive for the murder and contained the names of both defendant and the victim. There was no error in the admission of this evidence.

### V.

■ Defendant alleges that the trial court erred in refusing to allow defense witness Owen Mullin to testify. Mullin was the attorney who had represented defendant and the victim three years previously on charges of statutory rape and child neglect. Defendant alleges that Mullin would have testified that she and the victim had a good, supportive relationship at the time of the prior criminal proceeding and this would have supported her theory that she had no motive for killing Furnish. However, the record shows that defendant specifically waived this issue. At a hearing outside the presence of the jury, both parties agreed to a stipulation as to the perjury of defendant's daughter at the prior criminal proceeding and then defendant's counsel stated: "If the State would be willing to stipulate in the Court's records then *there would be no reason* to call Mr. Mullin and we would not do so." (emphasis added.) Defendant cannot now claim any error in the exclusion of Mullin's testimony when she had clearly stated she did not want to call him as a witness.

Defendant next alleges that the trial court erred in refusing to allow one of her witnesses, Luke England, to testify about his observations of animosity between Keown and defendant. In her offer to prove concerning this testimony, defendant's counsel stated: "I believe that Luke

England will testify that he has had conversation with Willie Keown wherein Willie Keown admitted that he was a drug dealer and was a rather indiscriminate drug dealer." It is clear that all England could testify to was his own conversations with Keown and that he did not have any information about what Keown and defendant talked about.

The trial court is accorded wide latitude in ruling on the relevance of evidence and it is axiomatic that collateral matters cannot be made the basis for impeachment. *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Bryant v. State,* (1973) 261 Ind. 172, 301 N.E.2d 179. There was no evidence that the conspiracy or murder of Furnish was connected in any way to Keown's alleged drug activity. Defendant has not demonstrated any abuse of discretion in the trial court's denial of this testimony.

## VI.

Defendant next alleges that the prosecutor made improper comments during the closing argument when he mentioned the word "insanity" in connection with defendant. However, defendant has preserved no error on this issue as she did not object to the remarks at the time they were made. *Johnson v. State,* (1982) Ind., 436 N.E.2d 796; *Holt v. State,* (1980) Ind., 408 N.E.2d 538; *Pavone v. State,* (1980) Ind., 402 N.E.2d 976; *Womack v. State,* (1978) 270 Ind. 8, 382 N.E.2d 939.

## VII.

Defendant next argues that the trial court erred in denying surrebuttal testimony after the state's rebuttal witness, Dove Annette Smith. She complains that she was unaware that Dove Annette was going to be called on rebuttal as she was not called during the state's case-in-chief. However, the record shows that defendant tried to establish during her case-in-chief that the conspiracy was between Keown and Dove Annette and that defendant was not involved through testimony of defense witness Candy Smith. The trial court correctly ruled that Dove Annette's testimony was proper rebuttal evidence about the conspiracy since it tended to contradict or disprove the evidence presented by defendant.

" 'Rebuttal evidence is, as its name indicates, that which tends to explain or contradict or disprove evidence offered by the adverse party.' *Layton v. State,* (1973) 261 Ind. 251, 255, 301 N.E.2d 633, 636. Surrebuttal evidence serves the same function with regard to rebuttal evidence offered by the opposing party." *Sims v. State,* (1977) 267 Ind. 215, 221, 368 N.E.2d 1352, 1355.

In this case, defendant wanted to call surrebuttal witnesses to impeach the credibility of Dove Annette by showing that she had allegedly given false testimony at a prior, unrelated trial. The trial court ruled that defendant had not properly laid the foundation for impeachment of the witness with this collateral matter, but also offered to have the witness returned to court so defendant could lay a proper foundation. Defendant declined to have the witness recalled. The record shows that defendant was allowed to cross-examine Dove Annette as to her prior false testimony and Dove Annette explained her reason for giving the prior false statement. Additional witnesses who would testify about the prior false testimony could in no way explain, contradict, or disprove Dove Annette's testimony that defendant and Keown conspired to murder James Furnish. We agree with the trial court that the additional witnesses defendant wished to call were not surrebuttal of the state's rebuttal evidence and there was no abuse of the trial court's discretion in refusing to allow this testimony.

## VIII.

Defendant finally contends that the trial court erred in sentencing her on both the conspiracy to commit murder and the murder convictions. She claims that the two convictions are derived from the same acts and thus should be merged. The law is clearly settled adversely to defendant's position. Each of the two offenses here re-

quired proof of an element which the other did not. In a similar case, we stated:

"Appellant next contends that he should not have had separate consecutive sentences ordered for felony murder and conspiracy to commit armed robbery. A conspiracy involves an intelligent and deliberate agreement to commit an offense. *Diggs v. State,* (1977) [266] Ind. [547], 364 N.E.2d 1176. It was unnecessary for the State to prove such an agreement in proof of the felony murder here. It was also unnecessary for the State to prove a killing in order to prove its conspiracy charge. The charges are therefore not the same for sentencing purposes."

*Williams v. State,* (1981) Ind., 426 N.E.2d 662, 670. It was proper here for the court to give separate sentences for the conspiracy and the murder.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.