**Bennett James HOBBS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1185 S 447.**

Supreme Court of Indiana.

Jan. 2, 1990.

William S. Suarez, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant's first jury trial resulted in his conviction of murder, for which he received a sentence of fifty (50) years. On direct appeal, this Court reversed his conviction and ordered a new trial due to the improper admission of evidence regarding appellant's prior criminal activity which did not tend to show a common scheme or plan. *Hobbs v. State* (1984), Ind., 466 N.E.2d 729. Upon retrial, a jury found appellant to be guilty of Felony Murder, for which he received a sentence of fifty (50) years.

The facts are: In early January of 1981, appellant talked with his friend Terry Keeler about burglarizing the home of Lloyd Faure. Keeler testified that appellant told him he would be the lookout.

On the evening of January 6, 1981, Keeler drove to the area of the victim's home and stood as the lookout while the home was burglarized. Keeler saw appellant and other men at the scene. After some time, appellant's confederate Joe Hernandez came out of the house and told Keeler they needed to get out of there. Keeler then saw appellant and Hernandez leave the scene in another vehicle.

The next day appellant and Hernandez visited Keeler and told him to get rid of the car he drove to the burglary. Before Keeler dumped the car in a farmer's field, appellant and Hernandez threw inside it a bank book, some computer print-out sheets, and a legal envelope. The three men later met at a bar and talked about the burglary. Hernandez said that when they left the scene, the man was not breathing and that appellant had "really fucked up" this time. Later, appellant gave Keeler a ring and a bracelet and told him they were from the burglary. He also told him to keep his mouth shut.

On January 7, 1981, Faure's neighbor became concerned because he did not answer his telephone. She walked over to his home and found his body in the garage. It was determined that Faure died from a skull fracture and hemorrhaging into the brain, most likely caused by a blow to his head.

It was subsequently learned that some stereo equipment, a coin collection, and two television sets were missing from his home.

Appellant argues the trial court erred in limiting the scope of his cross-examination of Keeler. Keeler had given several statements to police before appellant's first trial, each providing additional information. Before appellant's second trial, Keeler gave police more information concerning who was involved in the burglary and to whom the stolen property was sold after the burglary. The State's motion in limine concerning the disposition of the stolen property was granted on the basis that Keeler had no personal knowledge about what was taken from the Faure home, and evidence concerning the disposal of the property nearly three weeks after the burglary occurred was irrelevant to appellant's felony-murder charge and was not likely to lead to admissible evidence.

During appellant's cross-examination of Keeler, the trial court sustained the State's objection to questioning regarding the sale of the property on the ground that it was irrelevant and immaterial. Appellant asserts that he was prepared to impeach Keeler by producing witnesses who would contradict Keeler's story concerning the sale of the property. He claims he was denied a fair trial by the motion in limine and limitation of cross-examination because he was prohibited from impeaching Keeler's credibility.

■■■ Whether to permit cross-examination to test the credibility of a witness is within the trial court's discretion, and we will find reversible error only where there is an abuse of discretion. *Huffman v. State* (1989), Ind., 543 N.E.2d 360. The trial court has wide latitude in ruling on the admissibility of the evidence and in determining its relevancy. *Smith v. State* (1984), Ind., 465 N.E.2d 702. Collateral

matters cannot be made the basis for impeachment. *Smith v. State* (1983), Ind., 455 N.E.2d 346. We agree with the trial court that the disposition of the stolen goods three weeks after the burglary and murder was not relevant to appellant's charges. We find no error.

■ Appellant contends that reversible error occurred when the trial court failed to order Keeler to answer certain questions which were posed to him during his deposition taken prior to appellant's second trial. Keeler's attorney objected to questions concerning the disposition of the stolen property and Keeler asserted his Fifth Amendment right and refused to answer the questions. Appellant certified these questions to the trial court, but the trial court sustained the objections to the questions for the same reasons that the State's motion in limine was granted as discussed above. Appellant asserts that Keeler should have been forced to answer the questions because they reflected on his credibility as a witness.

We stated above that the disposition of the stolen property was a collateral matter and not a proper subject for impeachment. Therefore, we find the trial court did not err in sustaining the objections to the questions and refusing to order Keeler to answer them. *Id.*

■ Appellant argues that the testimony of a co-inmate concerning appellant's statements should not have been admitted because he was not advised of his *Miranda* rights before he made the statements.

Dennis Sullivan shared a cell block with appellant. During a shake-down of their cell block, Detective Weeks of the Porter County Jail found a letter written by Sullivan to Keeler in which Sullivan threatened Keeler and called him a snitch. Weeks told Sullivan that he could be charged with tampering with a witness and asked him whether he was involved in the Faure murder, and he said no. At the end of their conversation, Weeks asked Sullivan whether he could jot down anything he heard about the case. Sullivan testified that he had no agreement with Weeks or the State concerning his willingness to take notes or

testify in exchange for a more-favorable sentence. He testified that Weeks did not tell him to go to appellant and try to get information about the case, but instead asked that if he heard anything, would he jot it down. He also stated that he did not fear a charge of threatening a witness because his attorney told him that no charge could be brought because Keeler never received the letter.

Sullivan testified that while sharing a cell block, he and appellant talked about the difference between the possible sentences for a murder charge and a manslaughter charge. At that time, appellant told Sullivan that he did not mean to kill Faure, but he meant only to stun him. Appellant also told Sullivan on another occasion that had Faure not come home, he would have skated. Sullivan took notes on these conversations and testified about them at trial.

Appellant moved to suppress Sullivan's testimony. After hearing the State's comments that Detective Weeks never told Sullivan to initiate any conversation, nor was he promised any benefit in return, the trial court denied appellant's motion to suppress. Appellant contends Sullivan served as an agent of the police and acted under instructions by Weeks to collect information. He claims that Sullivan was paid for the information by not being charged for threatening Keeler and concludes that his testimony violated his Sixth Amendment right to counsel.

■ The record does not bear out appellant's claim that Sullivan was a police agent. Sullivan was asked whether he would write down information about the Faure case if he heard anything, but there is no evidence that he was induced or paid to collect information. The Sixth Amendment is not violated when a passive listener merely collects, but does not induce, incriminating statements. *Rutledge v. State* (1988), Ind., 525 N.E.2d 326; *Dier v. State* (1982), Ind., 442 N.E.2d 1043. We find no error in the denial of appellant's motion to suppress.

■ Appellant argues he was improperly limited in impeaching Sullivan by ques-

tioning him about his prior convictions. On direct examination, Sullivan testified that he had been convicted of forgery twice and theft once. On cross-examination, appellant asked him what he had forged in 1979. The trial court sustained the State's objection and would not allow appellant to delve into the details of Sullivan's prior convictions. Appellant asserts the restriction of Sullivan's cross-examination was reversible error.

Though a witness may be cross-examined about prior criminal convictions for offenses which are infamous crimes or crimes of dishonesty, the witness may be questioned only about whether he or she previously had been convicted of a particular crime. Generally, the details of the prior convictions may not be explored. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083. We find the trial court properly sustained the State's objection to questions about the details of Sullivan's convictions.

■ Appellant alleges the trial court erred in allowing Detective Weeks to testify about what two other State witnesses had told him.

Detective Weeks testified that Pam DeVoss told him that on the night of the murder, she saw vehicles in the Faure driveway and observed three people walk around the side of his garage. Appellant objected to Weeks' testimony on the basis that it was hearsay and DeVoss was not available for cross-examination because she was recuperating from having a baby a few days before trial. However, the State responded that a transcript of her testimony from the prior trial and her deposition would be offered, and appellant's objection was overruled.

On appeal, appellant makes the argument not that Weeks' testimony was inadmissible hearsay, but that the officer's testimony was offered only to bolster the credibility of DeVoss. Appellant cannot base his current allegation of error on an unrelated objection made at trial. Therefore, the issue has been waived. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

■ Appellant also argues the trial court erroneously allowed Detective Weeks to testify about what Keeler had told him.

Keeler gave Weeks information about the Faure burglary and murder which was substantially the same as Keeler's testimony at trial. Appellant objected to Weeks' testimony on the basis that it was offered only to improperly bolster the credibility of Keeler's testimony, which created reversible error.

Detective Weeks' testimony was merely cumulative of Keeler's testimony. Cumulative evidence alone is not grounds for reversal. *Watkins v. State* (1984), Ind., 460 N.E.2d 514. Both Weeks and Keeler were subjected to full cross-examination. We find no error in overruling appellant's objection.

■ Appellant contends the evidence is insufficient to sustain his conviction. He asserts that the only testimony connecting him with the crime was Keeler's testimony, which is not credible because he admitted he was a liar, thief, burglar, and convicted felon. He believes that the evidence is only circumstantial and does not establish his guilt beyond a reasonable doubt.

On a claim of insufficient evidence, this Court will not reweigh the evidence nor judge the credibility of the witnesses. A conviction may be sustained by the uncorroborated testimony of a single witness. *Moffatt v. State* (1989), Ind., 542 N.E.2d 971. We find that the evidence established by Keeler's testimony was sufficient to support the jury's verdict.

■ Appellant asserts that in considering all of the trial errors together, his conviction must be reversed. However, where trial irregularities standing alone do not amount to error, they cannot gain the stature of reversible error taken together. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.