Sanford MARSHALL, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9108–CR–660.

Supreme Court of Indiana.

Aug. 31, 1993.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of Counts I and II, Murder; Count III, Conspiracy to Commit Robbery, a .Class A felony; Counts IV–X, Robbery, a Class A felony; and Counts XI–XIX, Criminal Confinement, a Class B felony. Appellant received a sentence of sixty (60) years each on Count I and II to be served concurrently, thirty (30) years on Count III, to be served consecutively to the sentences for Counts I and II, thirty (30) years for each of Counts IV through X, to be served concurrently with Counts I and II, and ten (10) years for each of Counts XI through XIX, to be served consecutively with the sentences for Counts I and II. The trial court followed the jury's recommendation against sentencing appellant to death.

The facts are: On January 2, 1981, Kenneth Miller, Lisa Hendrickson, and the manager, Nancy Coates, were working at Bargain Barrel, a clothing store in Indianapolis. A black man, who was later deter-

mined to be James Coleman, entered the store. A white man, who was later determined to be appellant, came into the store, left, but then returned. Coleman drew a gun and said, "I decided I want everything," and directed those in the store toward the area of the cash register. At that point, Coates ran out the door, pursued by Coleman, who then engaged in a struggle with her. After Coleman gained control of Coates, he led her and the others to a back room of the store. The struggle was witnessed by people from a nearby music store. When they entered the clothing store, they, too, were ordered to go to the back room. Coleman instructed appellant to tie up those who were in the back room, which he did. He also took the victims' wallets.

At one point, the people in the back room heard someone at the front door say, "I'm sorry. I'll leave," followed by, "Oh, no," followed by gunshots. Everyone in the back room, including appellant, ran out the back door. Miller gave a statement to the police on the evening of the crimes and identified a photograph of appellant as the white man who had tied up the victims. Several days later Miller identified appellant at a lineup. Coates identified appellant by photograph and also at a lineup. Taylor identified appellant at a lineup. Both Miller and Coates identified appellant in court.

Mark Klippel, an employee of the IRC Music Store located near Bargain Barrel, went to Bargain Barrel after he learned that several of his fellow employees had gone there. From the front door, he saw a man's face through the small window in the door. Klippel then saw a man in a security car arrive. The man exited his car and was carrying a walkie-talkie. Klippel told him that he thought someone was in the back room of the store and that some of his fellow employees might be in there. The security guard motioned Klippel back toward the music store. Klippel observed another security guard arrive and get out of his car. When Klippel looked again, he saw a black man pointing a chrome-plated gun at close range at the first security guard. As Klippel walked back to the store, he heard some shots fired. Approximately eight to twelve seconds later Klippel heard more shots. Klippel ran inside his store, and when he looked out later, he saw a man lying in the parking lot about twenty feet from the curb.

At about 6:20 p.m., Special Deputy Sheriff John Curl responded to a call and arrived at the scene. He found Coleman lying in the parking lot with a blue steel handgun near him. He kicked the gun away and went to check the security car nearby. He found Deputy Sheriff Gerald Morris behind the wheel mortally wounded. Inside the store he found Deputy Sheriff Terry Baker dead on the floor.

Baker, Morris, and Coleman all died of gunshot wounds. State's Exhibit No. 7 was a handgun found near Baker's body and was the weapon that killed him. State's Exhibit No. 23 was a weapon found in Deputy Morris' security car and was the weapon that killed Coleman. State's Exhibit No. 24 was a revolver that belonged to Terry Baker but was found near Coleman's body and was the weapon that killed Morris.

James Byrd testified that appellant came to his home on the day of the crime at approximately 8:00 or 8:30 p.m. Appellant told him that he and a black man had gone into a place to hold it up, that something had gone wrong, and that the black man had started shooting. Appellant indicated that they had planned to go into Bargain Barrel, and the black man was to hold it up. Appellant was supposed to pose as a customer and receive orders to tie up the people in the store. Coleman would then take appellant with him during the getaway.

Appellant asked Byrd to provide him with a handgun. Byrd refused but did give appellant a shotgun and twenty rounds of ammunition. Three or four weeks prior to Christmas, appellant had shown a nickel-plated .32 caliber Smith & Wesson revolver to Byrd. Byrd testified that State's Exhibit 7 looked like the gun appellant had shown him. The gun had a dragging cylin-

der just like the gun appellant had shown him.

Appellant then asked for a ride to Louisville. Appellant, his wife, and Byrd drove there, where appellant used a false name to purchase a bus ticket to Memphis, Tennessee. Appellant got some money from his wife, and told Byrd he could be found somewhere within two hundred miles of Memphis but wasn't sure where. Appellant's wife dropped Byrd off at his home. Later that evening Byrd was contacted by the police and gave them a statement.

Appellant was arrested in Tupelo, Mississippi, and when the arresting officer asked his name, appellant responded by saying, "You know who I am."

Damon Malone testified that he lived with Coleman and a man named Otis Combs. He stated that during the two and one-half to three months prior to the crimes appellant frequently visited Coleman. He saw appellant and Coleman together on the day of the crimes from approximately 1:00 to 3:00 p.m. Combs' deposition testimony indicated that appellant visited Coleman several times a week. Combs stated that appellant and Coleman had been together on the day of the crimes between 4:00 and 4:30 p.m. Combs saw a nickel-plated gun in the kitchen that he had seen appellant possess before. Detective Baker had shown State's Exhibit 7 to Combs who identified it as the weapon he had previously seen in the kitchen and in appellant's possession.

Appellant claims the trial court committed reversible error by denying his motions to dismiss the information against him and the death penalty allegation. Appellant states that the original motion to dismiss which he claims was filed with the trial court is now lost. However, as pointed out by the State, the record reflects that due to the trial court's decision to grant extensions of time in which to file motions, appellant was given until March 25, 1981 to file his motions. Appellant did in fact file motions on that date which included a "Motion to Dismiss the Death Penalty Information for Failure to State Aggravating Circumstances" and a "Supplemental Motion to Dismiss."

■ The gist of appellant's claim is that the State improperly charged appellant as a principal when the theory of the State's case was accomplice liability. Appellant further argues that the information lacked the specificity required for notice of that accusation against him. He moved to declare the death penalty statute unconstitutional and to have that allegation against him dismissed.

Appellant claims the jury must have convicted him as a principal on both counts of murder based upon the notion that he failed to oppose Coleman's activity. He claims that those facts should have been alleged in the charging information. The trial court agreed with the State's argument that an accomplice may be charged as a principal even if the evidence only establishes that he was an accomplice. *Catrabone v. State* (1986), Ind., 490 N.E.2d 272. An accomplice is criminally liable for the acts of his confederates and may be held responsible as a principal. *Id.;* Ind.Code § 35–41–2–4. There was no error in the manner in which appellant was charged.

■ Appellant argues that the death penalty charge should have been dismissed because his guilt was merely vicarious, citing *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140. He claims that proceeding with the death penalty charge against him is unconstitutional under the reasoning in *Enmund.*

In *Enmund,* the United States Supreme Court held that imposing the death penalty on a person who aided and abetted a felon during the course of which a murder is committed by others violated the Eighth and Fourteenth Amendments to the United States Constitution. As pointed out by the State, Enmund did not receive the death penalty because he did not kill, attempt to kill, or intend that a killing take place or that lethal force would be used. The Supreme Court went on to state that the focus must be on appellant's own culpability as a constitutional requirement to en-

sure individualized consideration in imposing the death sentence.

The State points out that the holding in *Enmund* was further refined in *Tison v. Arizona* (1987), 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127. The United States Supreme Court held that a felony-murder death penalty imposed upon defendants who do not kill or intend to kill victims, but who have a major personal involvement in the felony and show a reckless indifference toward human life, does not violate the Eighth Amendment to the United States Constitution.

■ Therefore, the trial court did not err when it denied the motion to dismiss the death penalty allegation. Further, appellant was not prejudiced by the ruling because he did not receive the death penalty. *See e.g., Utley v. State* (1992), Ind., 589 N.E.2d 232.

■ Appellant claims the probable cause affidavit used to justify the issuance of the arrest warrant is insufficient. He claims that because of defects in the affidavit he was unreasonably placed under arrest and that the evidence gained in the course of that arrest should have been suppressed at trial. That evidence includes a drivers license, birth certificate, bus ticket, and baggage identification tags, in addition to evidence of lineup identification.

■ At trial, appellant objected to admission of luggage tags and other items which were found on his person on the basis that there was no search warrant nor was there consent to search. Regarding the lineup identification evidence appellant argued that there was an insufficient foundation laid for admission of the evidence. The State is correct in its statement that waiver of an argument occurs when a defendant presents one argument at trial and a different argument on appeal. *Chandler v. State* (1991), Ind., 581 N.E.2d 1233. Appellant has waived this issue.

We note, however, that the affidavit is valid on its face. Appellant claims that the affidavit is defective in that appellant's name does not appear on the face of the affidavit, that the affiant does not claim to have firsthand knowledge of that to which he swears, that sources of information are unnamed, and that there is no information which tends to show that the information provided by the named witnesses is credible and reliable.

The information in the affidavit appears to have been supplied by victims of the robbery. The information from each of the named victims corroborates the other. The Court of Appeals held in, *Wells v. State* (1979), Ind.App., 397 N.E.2d 1250, that information given to the police by a bank officer after a robbery at the bank was credible because it was reasonable for the official to report the crime. It is reasonable that the victims of the robbery at Bargain Barrel would report information to the police. Moreover, the information provided by the landlord was corroborated by the information given by Deborah Gilmer. The photograph identification information was given to the affiant by another officer. Further, the affidavit was attached to the charging information. There can be little doubt to whom the information in the affidavit referred. The affidavit complied with the requirements of Ind.Code § 35–33–5–2(a–b).

Because the affidavit sufficiently complied with the statute, appellant was not placed under arrest wrongfully. Moreover, the items recovered from appellant were discovered during a search subsequent to the lawful arrest. The luggage tags were in plain view on the outside of the pieces of luggage. The trial court did not err by denying appellant's motion to suppress or by allowing the exhibits in evidence.

Appellant claims the State failed to produce certain information which would have been exculpatory or would have aided in impeaching or cross-examining witnesses. Specifically, appellant claims that the State failed to turn over information concerning other possible suspects, information concerning the past or present informant status of two witnesses for the State, and information concerning the criminal history of one of the witnesses.

■ The State has the duty to disclose to the defense evidence which is material to either guilt or punishment of the accused. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. This duty extends to evidence which can be used for impeachment. *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481.

■ Appellant asserts that he was denied information regarding police investigation into the whereabouts of other suspects. On the night of the robbery, the police received a telephone call advising them that someone fitting the description police had broadcast had been seen at the American Inn, a motel in the Castleton area. Police officers investigated the site and found persons involved in drug violations but no one who had any involvement in the robbery and murders.

The record reflects that the prosecutor informed defense counsel of the existence of a search warrant for those premises. The prosecution also made available in open court the entire file relating to the drug case which arose from the investigation. We agree with the State that appellant has not demonstrated how the case would have been presented any differently or what additional information should have been provided defense counsel. We find no *Brady* violation here.

■ Appellant also asserts that he was not provided with the prior criminal history of State's witness Damon Malone until after he had been deposed. He claims that he was prejudiced by not being able to impeach that witness with the information.

The record reflects that an attorney representing Malone was present in the courtroom at the trial in the instant case. The prosecution suggested that defense counsel was free to discuss with that attorney any plea agreement which may have been struck with the State in an unrelated case. Defense counsel cross-examined Malone with respect to his prior criminal history and plea agreement. We find no prejudice to appellant regarding information of prior criminal history or plea agreements.

■ Appellant claims that witness Otis Combs was an informant for the police and that the prosecution withheld from the defense information regarding that association. We have held that the prosecution has the duty to reveal any deals made with a witness, such as promises, grants of immunity, or rewards in exchange for testimony. *McBroom v. State* (1988), Ind., 530 N.E.2d 725. There must be concrete evidence of the existence of an agreement before the disclosure must be made. *Id.*

■ The prosecutor stated to the court that to the best of his knowledge Combs had not been an informant for the Indianapolis Police Department. The prosecutor further stated that the Indianapolis Police Department was not involved in the investigation of this case. The prosecutor presented the testimony of Detective Dunn of the Indianapolis Police Department to establish the unavailability of State's witness Otis Combs. Dunn was contacted by the prosecutor for the purpose of attempting to serve process on Combs. Detective Dunn stated on cross-examination that Otis Combs had served as an informant for him in one case in 1975, but that Combs had received no consideration for the information he provided. Dunn stated that the prosecutor had no knowledge of the incident. The prosecutor also stated that he first had learned of Combs' past informant status when Detective Dunn testified.

■ Assuming the prosecutor knew that Combs was an informant, disclosure was not required because there was no evidence to suggest that a deal had been struck with Combs in exchange for testimony in the present case. Moreover, assuming that the disclosure should have been made, it likely would not have changed the result. Reversible error resulting from suppression of evidence by the prosecution occurs only if it undermines confidence in the outcome of the trial. *United States v. Bagley, supra.* Combs had given reliable information to Detective Dunn. It is unlikely that information regarding his past reliability would have altered the result. We have held that where there is no rea-

sonable probability that the proceeding would have been resolved differently, reversal is not required. *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, *cert. denied*, —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105.

■ Appellant also contends that he did not receive Combs' criminal history until after his deposition had been taken. He claims that because the deposition had been read into the record he was deprived of the right to impeach Combs with his criminal history. However, as pointed out by the State, the trial court suggested to defense counsel that he could read any criminal history into the record if he wanted to do so after the deposition was read. Defense counsel did not choose to do so.

■ We have held that the cross-examination of witnesses, as well as the general conduct of the trial, is within the sound discretion of the trial court. *Clifford v. State* (1984), Ind., 457 N.E.2d 536. We will not reverse the trial court's decision except upon a finding of an abuse of discretion. *Id.* Appellant has waived any argument that he was prejudiced by the trial court's choice of remedy.

Appellant claims admission of State's Exhibits Nos. 1, 19, 21, 26, and 28 was error. As pointed out by the State, the admissibility of two of those exhibits is not at issue.

■ State's Exhibit 21 consisted of the statement to police by State's witness, Rex Burcham. Appellant is correct that the exhibit was admitted in evidence over objection. However, the court and the parties later determined that this exhibit would not be read into evidence and would not be shown to the jury. Therefore, if there was any error in the admission of the exhibit, it was harmless error because appellant did not suffer any prejudicial effect.

■ State's Exhibit 19 was a photograph of the crime scene and the body of one deputy on the ground. At trial, appellant argued on objection that there was an insufficient foundation for admission of the exhibit. The State points out that there is no argument presented concerning admission of this exhibit in appellant's brief. Further, the argument presented regarding admission of the other exhibits concerns their inflammatory nature. Assuming that appellant meant to include this exhibit in his argument no error would be found. We have held that an appellant cannot raise one ground for objection at the trial level and argue a different ground on appeal. *Jester v. State* (1990), Ind., 551 N.E.2d 840.

■ State's Exhibits Nos. 1, 26, and 28 were autopsy photographs of Coleman, Morris, and Baker. Although the photographs are not in the record, we note that the descriptions given by counsel during the argument on the objections are sufficient for appellate review.

Appellant claims the photographs were inflammatory and prejudicial as well as cumulative and repetitive. He argues that admission of the exhibits was improper in light of the stipulation by both parties of the cause of death and identity of Coleman, Baker, and Morris.

The photographs were described by both attorneys as depicting the upper chest and face area of the three decedents. The decedents' eyes were open and bullet wounds were present.

■ Admission of photographs is within the sound discretion of the trial court. *Williams v. State* (1990), Ind., 555 N.E.2d 133. We will not disturb that decision on appeal unless there is an abuse of that discretion. *Id.* Photographs are generally admissible if they depict an object or scene which a witness would be permitted to describe in his or her testimony. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290.

Defense counsel and the prosecution stipulated the identity of the decedents and the cause of death. Appellant contends admission of the autopsy photographs, therefore, was cumulative and repetitive. We have held that the admission of cumulative evidence alone is not grounds for reversal. *Miller v. State* (1989), Ind., 541 N.E.2d 260. Moreover, we have held that a concession as to the cause of death does not render photographs of deceased victims irrelevant

or inadmissible in a murder trial. *Williams, supra.*

■ Appellant asserts that the photographs were inflammatory and prejudicial because they were "gruesome." We have held that relevant evidence is not inadmissible simply because it is gruesome. *Phillips, supra.* It should be excluded, however, if it is unnecessary and is introduced only to arouse or inflame the jury's emotions against the defendant. *Id.*

The State argued that the photographs were offered to prove the allegations of the information, to corroborate the testimony presented, and to prove identification. The trial court overruled the objection. The record reflects that the photographs were offered after the State read the stipulation agreed to by the two parties. The trial court stated the jury would receive the evidence in order to avoid calling a pathologist to testify.

The exhibits were relevant; therefore, we turn to appellant's argument that the exhibits were inflammatory and prejudicial. We have held that a relevant photograph is correctly admitted in evidence unless it is inflammatory in nature and that this outweighs its relevancy. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied*, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158.

From the description of the exhibits which is contained in the record, we do not believe that they were inflammatory or prejudicial. We have held that admission of photographs of a dismembered corpse was not unduly prejudicial. *Komyatti v. State* (1986), Ind., 490 N.E.2d 279. We also have held that admission of photographs of a decomposed body was not reversible error. *Shelton v. State* (1986), Ind., 490 N.E.2d 738. In *Feliciano v. State* (1985), Ind., 477 N.E.2d 86, we held that admission of seven photographs of the decedent was neither inflammatory nor prejudicial.

In the present case, one photograph of each decedent was admitted. As pointed out by the State, the trial court was mindful of the possibility of prejudicing the jury by admission of inflammatory exhibits.

The trial court sustained defense counsel's objection to admission of the official photographs of the deputies in their full uniforms. We find no error in admission of the exhibits.

Appellant contends the trial court erred by denying his motion for a protective order to prevent the State from deposing certain witnesses. He also contends the court erred by permitting the State to use a deposition in lieu of testimony in court.

Appellant notes that on January 3, 1981 charges were filed against him. Shortly thereafter some depositions were taken by the defense. He then states that on January 12, 1981, the State filed a notice that it would depose certain witnesses on January 15, 1981. On January 14, 1981, appellant filed a motion seeking to prevent or delay the depositions. The trial court denied the motion on January 15, 1981. Appellant claims the trial court's ruling was error in that appellant's right to confront witnesses testifying against him was violated.

One of the witnesses listed on the State's notice did not testify in court, and the deposition was not used against appellant at trial. Two of the witnesses testified in court, and their depositions were not read at trial. Appellant read the deposition of another witness, and the State produced his live testimony. Thus, there is no issue regarding the depositions of those witnesses.

Appellant concedes that the defense had deposed certain witnesses prior to the State's notice of taking depositions. At the time of appellant's trial, Ind.Code § 35-1-31-8 provided that when a defendant takes depositions to be read on the trial, that action shall be construed as a waiver of his constitutional right to object to depositions taken by the State to be read on the trial.

The State sought to admit the deposition of witness Otis Combs at trial. As discussed above, appellant argued that the State had not proven Combs' unavailability. We disagreed with that argument in the discussion above. The issue presented here is error in the trial court's ruling on the ground that use of the deposition would

deny appellant his right to face-to-face confrontation with the witness.

■ A deposition may be used in lieu of in-court testimony when the witness is unavailable and the testimony shows adequate *indicia* of reliability. *Hunter v. State* (1991), Ind., 578 N.E.2d 353. The Federal Rules of Evidence provide for use of a deposition upon a showing of a witness's unavailability if the party against whom the deposition is introduced had the opportunity and motive to develop the testimony by direct, cross, or redirect examination. Fed.R.Evid. 804(b)(1). In the present case, defense counsel attended the deposition and cross-examined the witness. Further, the record reflects that appellant was present at the deposition. We find no violation of appellant's confrontation rights here.

■ Appellant also requests us to consider all objections and rulings as they are found in the record pertaining to the trial court's rulings on the admissibility of the questions and answers from Combs' deposition which were read at trial. To do so would require this Court to brief appellant's argument for him. We have held that it is the responsibility of appellant to support his argument on appeal with appropriate citations to legal authorities as well as to appropriate sections of the record. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349. Without citation to legal authority in addition to citation of the record, we cannot determine the merits of the claim and, thus, consider the issue waived. *Id.*

Appellant also contends he was denied the opportunity to cross-examine Combs effectively because he was not provided with a copy of Combs' criminal history until after the deposition was taken. We noted in the discussion above that the trial court suggested to defense counsel that he could read off any impeaching *Ashton* offenses after the portions of the deposition were read into evidence. (*Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.) Defense counsel chose not to do so.

As pointed out by the State, had appellant been in possession of Combs' criminal history, only the fact of conviction for impeaching offenses could have come into evidence. *Hobbs v. State* (1990), Ind., 548 N.E.2d 164. Any details concerning the crimes committed would not have been properly admitted. *Id.* Therefore, the remedy proposed by the trial court would have placed appellant in the same position as if he had the criminal history prior to the deposition. Appellant has failed to demonstrate how he was prejudiced by the trial court's choice of remedy.

■ Appellant claims he was denied his right to compulsory process. During his trial, appellant subpoenaed Detective Cooper, the Deputy Sheriff who signed the affidavit for probable cause. Defense counsel argued that Det. Cooper was supposed to be the next witness, but might be attempting to evade service of process. The State replied that Det. Cooper was in the hospital for an emergency surgery which could not be delayed until after trial. Defense counsel requested that the trial court issue a bench warrant for Cooper's arrest. The trial court directed defense counsel to telephone the hospital to confirm that Cooper was in fact hospitalized. Defense counsel confirmed this fact, and again requested the issuance of a bench warrant. The trial court declined to do so. Appellant then requested a recess without stating a reason therefor, which the court denied. Appellant argues the trial court erred by denying his request for a recess.

Appellant relies upon *Vaughn v. State* (1992), Ind., 590 N.E.2d 134, to support his position. As the State points out, *Vaughn* is distinguishable from the case at bar. In *Vaughn*, the defendant moved for a continuance when his only witness was in labor. That witness, Vaughn's sister, was going to contradict testimony of one of the State's witnesses. We held that under those circumstances the trial court abused its discretion by denying the motion for continuance.

Defense counsel did not state his reason for requesting the recess. Appellant speculates that defense counsel made the re-

quest in order to prepare an offer to prove or to prepare a motion which would meet the requirements of Ind.Code § 35–36–7–1 (then Ind.Code § 35–1–26–1). Appellant was not prejudiced by the trial court's ruling. The argument occurred shortly after a recess and two recesses were granted before they recessed for lunch. The State correctly points out that a motion or offer to prove could have been prepared during that period of time.

Defense counsel argued to the trial court that the testimony was crucial to appellant's case-in-chief; however, upon further questioning by the court it was determined that appellant wanted to impeach witnesses with information they had given Det. Cooper during the investigation of the crimes. Defense counsel stated that he thought some persons had given inconsistent statements and that he needed Det. Cooper's testimony to ascertain where the State had obtained the statements. The trial court correctly informed counsel that the defense would have to lay the foundation for use of the prior statements by asking the witnesses if they had informed Det. Cooper of specific information.

 Appellant argues that Det. Cooper should have been compelled to testify because he had "apparently" investigated the crimes occurring at the Bargain Barrel and that he should have been able to provide testimony concerning other theories the police had and the investigation of other suspects. However, as pointed out by the State, testimony regarding suspects arrested at the American Inn was provided by Chief Dunbar. Appellant did not show that there were any other suspects or police theories to which Det. Cooper could have testified. Where an absent witness could not provide personal observations concerning relevant and material evidence there is no constitutional violation in denying a continuance. *United States v. Tanner* (7th Cir.1991), 941 F.2d 574, *cert. denied*, — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 432. A trial court properly denies a motion for continuance when speculation concerning potential testimony is presented. *Id.* The trial court did not err.

Appellant claims the trial court incorrectly instructed the jury concerning accomplice liability. He contends that giving Final Instruction 49 was reversible error.

The trial court gave the following instruction:

"Under the law of Indiana a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

1.) Has not been prosecuted for the offense;

2.) Has not been convicted of the offense; or,

3.) Has been acquitted of the offense.

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. It is the being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime, though without taking a direct share in its commission."

Appellant asserts that the portion of the instruction appearing after the statutory language is an erroneous statement of the law. Appellant recognizes that trial counsel failed to object to this instruction, but argues that giving the instruction constitutes fundamental error.

 Appellant correctly points out that fundamental error has been described as blatant error creating a substantial potential for harm. *Terry v. State* (1984), Ind., 465 N.E.2d 1085. Failure to object does not preclude review when such preclusion would deny the defendant fundamental due process. *Johnson v. State* (1979), 271 Ind. 145, 390 N.E.2d 1005, *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312.

Appellant supports his argument by citing *Small v. State* (1988), Ind., 531 N.E.2d 498. In *Small*, the majority found that the words "[i]t is also the law that...." separating portions of the instruction created two separate bases for criminal liability. The second part of the instruction lacked any statement that criminal liability required proof of voluntary conduct in viola-

tion of a criminal statute. The majority found reversible error in that situation.

■ Instructing the jury lies solely within the discretion of the trial court. *Jackson v. State* (1991), Ind., 575 N.E.2d 617. An error in an instruction is reversible only if the nature of the instruction is such that the entire charge of which it is a part misleads the jury regarding the law applicable to the case. *Id.* In the case at bar, unlike *Small,* the portion of the instruction which appellant has challenged contains the statement that voluntary conduct on the part of appellant must be proved in order to find criminal liability. The remainder of the instruction includes language which is similar to the language we found proper in *Polk v. State* (1984), Ind., 467 N.E.2d 666. We find no defect in the instruction which was given.

■ Appellant claims his convictions are not supported by sufficient evidence. The standard of review which we use when presented with a challenge to the sufficiency of the evidence involves a consideration of only that evidence most favorable to the State, and all reasonable inferences drawn therefrom. We will not reweigh the evidence nor judge the credibility of the witnesses. We will not disturb the findings made by the trier of fact if we find that there is substantial evidence of probative value to support the conviction. *Miller v. State* (1991), Ind., 563 N.E.2d 578.

Byrd testified that appellant told him that he and Coleman planned to go into Bargain Barrel. Coleman was supposed to hold up the store while appellant participated as a customer. Coleman was to give appellant orders to tie people up. They planned to leave together after the crimes were committed. This testimony if believed by the jury was sufficient to support the convictions.

Appellant argues that there is evidence in the record which supports the inference that appellant was present merely to arrange the sale of a car and that his non-involvement in the confrontation with the officers is further evidence of that fact. He claims that he fled to Mississippi because he feared he would be wrongly charged with the crimes.

■ Appellant is asking us to reweigh the evidence. This we will not do. The jury was not required to believe appellant's account of the events which took place. *Hubble v. State* (1973), 260 Ind. 655, 299 N.E.2d 612. The trier of fact must resolve conflicts in the evidence. *Cuppet v. State* (1983), Ind., 448 N.E.2d 298. It was for the jury to determine which witnesses to believe or disbelieve. *Roberson v. State* (1982), Ind., 430 N.E.2d 1173. The evidence is sufficient to support the convictions.

Appellant claims the deputy prosecutor engaged in misconduct during his trial. He asserts the prosecutor withheld exculpatory evidence from him which would have aided him in his defense. He also asserts the prosecutor committed misconduct during cross-examination of appellant concerning his prior criminal history.

■ Our review on a claim of prosecutorial misconduct involves a consideration of whether the prosecutor's conduct placed appellant in a position of grave peril to which he should not have been subjected. *Fox v. State* (1988), Ind., 520 N.E.2d 429. The determination of grave peril involves consideration of the probable persuasive effect of the misconduct on the jury's decision. *Id.* We also consider whether there are repeated instances of misconduct which reflect a deliberate attempt to improperly prejudice appellant's right to a fair trial. *Id.*

Appellant's allegation that the prosecution withheld exculpatory evidence is without merit. As was discussed above, we have found no *Brady* violation. The prosecuting attorney was not aware of the fact that State's witness Combs had served as an informant on one previous occasion for which he received no monetary gain.

■ Appellant testified at trial. During cross-examination, he was questioned about his prior criminal history. Appellant claims the prosecutor's questioning was aimed at proving that appellant was predisposed to criminal activity.

The State attempted to impeach appellant with evidence of a conviction for assault with a deadly weapon. Defense counsel's objection to the question was sustained and the jury was admonished to disregard the question. The State attempted to rephrase the question. Defense counsel's objection was sustained by the trial court. The State then questioned appellant about a theft conviction. The trial court *sua sponte* admonished the jury that prior convictions went only to the credibility of the witness and did not establish a predisposition to commit the charged offense.

■ Appellant, therefore, challenges the prosecutor's attempt to rephrase the question to which an objection had been sustained. Assuming, *arguendo*, that the conduct was improper, it is unlikely that the question had any probable persuasive effect on the jury such as to place appellant in a position of grave peril. Moreover, appellant has not shown how the trial court's admonishment to the jury was insufficient to cure any problem. An admonishment is usually considered adequately curative. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied*, 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490.

■ Appellant claims he was denied effective assistance of counsel. In order to succeed on this claim, appellant must first show that trial counsel's performance was deficient under prevailing professional norms. He also must show that the deficient performance was so prejudicial to his case that he was denied a fair trial. Denial of a fair trial occurs when a conviction results from a breakdown in the adversarial process, rendering the result unreliable and undermining confidence in the result. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Smith v. State* (1989), Ind., 547 N.E.2d 817.

■ Appellant was represented by one attorney at trial. He asserts that because the trial court refused to dismiss the death penalty charge, trial counsel's efforts were distracted by the focus on saving appellant's life. We have amended our Rules of Criminal Procedure to require that the defense be furnished with two attorneys in capital cases effective January 1, 1992. Ind.Crim.Rule 24.

The fact that appellant's case was tried before the amendment of Rule 24 does not amount·to a *per se* denial of effective assistance of counsel. Appellant has failed to show how he was harmed by the fact he was represented by only one trial counsel. Appellant did not receive the death penalty.

■ Appellant also asserts the court's denial of his request to excuse the jury for purposes of making an additional motion denied him effective assistance of counsel. Appellant claims that at the start of the second day of trial defense counsel informed the court that he had not had time to confer with his client and requested that the court excuse the jury for the purpose of making an additional motion. The trial court denied the request and informed counsel that any additional motions would be made at the next recess. Trial counsel objected to the trial court's decision.

Appellant has failed to show us what harm occurred as a result of the trial court's ruling. Appellant had the opportunity to file motions, but did not do so. We fail to see how appellant's counsel was ineffective in this regard.

Appellant asserts that trial counsel's performance was deficient in that he failed to object to the instruction on accessory liability. Because we have found in our discussion above that the instruction was a proper one, trial counsel's performance was not deficient and appellant was not prejudiced by the representation he received.

■ Appellant claims his defense was prejudiced by trial counsel's failure to make an offer to prove the content of Cooper's testimony. Appellant also claims that counsel was deficient for not effecting service of process in a more timely manner.

As pointed out by the State, the trial court refused to issue the body attachment because Cooper was in the hospital not because service of process had been untimely made. Moreover, appellant does not state what the offer should have been but

speculates concerning what the testimony would have been. Because appellant cannot show what counsel should have offered, appellant has not shown how trial counsel performed in a deficient manner or how appellant was prejudiced.

▉▉▉ Appellant claims the trial court denied his counsel the opportunity to make objections outside the presence of the jury. Appellant claims his counsel was unable to protect him from "abusive cross-examination" concerning his criminal history. The record reflects that trial counsel's objections were sustained, and the jury was admonished to disregard the objectionable matter. Appellant has not provided us with argument concerning what trial counsel should have done if he had been successful in his request to excuse the jury. He also has failed to argue how he was prejudiced by the lack of opportunity to do so. Appellant has not demonstrated deficient performance of trial counsel.

▉▉▉ Appellant also claims he received ineffective assistance of appellate counsel. Appellant states he obtained his first appellate counsel at his own expense. Before the first appellate counsel filed a motion to correct error in this case, he was disbarred. Appellant's subsequent appellate counsel committed suicide before taking action on appellant's appeal. Appellant claims that denial of a timely appeal is reversible error.

▉▉▉ The standard used for claims of ineffective assistance of trial counsel is used when the issue of ineffective assistance of appellate counsel is raised. *Smith v. State* (1989), Ind., 535 N.E.2d 1155. Therefore, because we have found no error in appellant's trial, conviction, or sentence, no prejudice has been shown to result from the delay.

Appellant claims the trial court abused its discretion in its written order by sentencing him to consecutive sentences after finding that no aggravating or mitigating circumstances existed with respect to the conspiracy or confinement counts. He relies on *Brown v. State* (1982), Ind., 442 N.E.2d 1109, and *Taylor v. State* (1982), Ind., 442 N.E.2d 1087 to support his position. In those cases, we held that the trial courts erred by imposing consecutive sentences after finding no aggravating circumstances present to justify imposition of the sentences.

We have a different situation in the case at bar. There is a discrepancy between the oral sentencing order and the written sentencing order. In its oral sentencing, the court sentenced appellant to sixty (60) years on each of the murder counts, to run concurrently. The trial court found appellant's criminal history, the fact that he was on parole at the time of the offenses, and that a lesser sentence would depreciate the seriousness of the offense, to be aggravating circumstances. Appellant received a sentence of thirty (30) years on Count III which was to run consecutively to the sentences for murder. The trial court sentenced appellant to thirty (30) years on Counts IV through X, to run concurrently with the murder sentences. Appellant also received ten (10) years each on Counts XI through XIX, to run consecutively to the murder counts. However, appellant asserts that in the court's written sentencing order no aggravating or mitigating circumstances were found with respect to the conspiracy or confinement counts. Therefore, appellant argues that it was error for the trial court to impose consecutive sentences.

▉▉▉ The decision to enhance a presumptive sentence or order terms to be served concurrently or consecutively is within the discretion of the trial court. *McCollum v. State* (1991), Ind., 582 N.E.2d 804. We have held that a trial court may enhance a sentence, impose consecutive terms, or both. *Id.* However, the record must show which factors were considered in determining the sentence imposed. There is no constitutional or statutory prohibition against using the same factors to both enhance a sentence or impose consecutive sentences. *Id.*

In the case at bar, the transcript of the sentencing hearing reveals that the trial court found the existence of aggravating circumstances which the court detailed.

The court then enhanced the sentences for murder, and ordered some terms to run consecutively and others to run concurrently. The State has cited cases which hold that the transcript of the sentencing hearing takes precedence over the judgment order. *United States v. Roberts* (7th Cir. 1991), 933 F.2d 517; *United States v. Villano* (10th Cir.1987), 816 F.2d 1448. The written judgment and the commitment order is evidence which may be used to determine what sentence was intended where the oral sentence is ambiguous. *Id.*

We believe that this reasoning is helpful to determination of the case at bar. The oral sentencing statement is a clear representation of the trial court's finding of aggravating circumstances. Nowhere in the transcript of the hearing does the trial court state that there are no aggravators or mitigators present in reference to the conspiracy charge or the confinement charges. This misstatement is present in the written sentencing order. It is logical that the transcript created by use of notes taken during the proceeding is more accurate. We find the trial court's statement regarding sentencing located in the transcript of the hearing to be proper.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.