**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 29 2012, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS G. KROCHTA**
Vanderburgh County Public Defender
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF J.C., MINOR CHILD, AND HER FATHER, J.P., | ) ) ) ) ) | |
| J.P. | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 82A01-1107-JT-325 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
Cause No. 82D01-1003-JT-23

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant/Respondent J.P. ("Father") appeals the juvenile court's order terminating his parental rights to J.C. Father alleges that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of his parental rights. Concluding that the evidence was sufficient to support the termination of Father's parental rights, we affirm.

## FACTS AND PROCEDURAL HISTORY

Father has one child, J.C., at issue in this appeal.[1] J.C. was born on February 11, 2009. When J.C. was born, she suffered various medical and developmental issues which require ongoing treatment. As a result of her medical and developmental conditions, J.C. continues to have various special needs in her daily care.

DCS first became involved with J.C. shortly after her birth "due to being involved [with] her half-siblings at the time." Tr. p. 38. On March 11, 2009, DCS filed a petition alleging that J.C. was a child in need of services ("CHINS"). On May 12, 2009, DCS filed an amended petition alleging that J.C. was a CHINS. With respect to Father, the amended CHINS petition alleged that Father was unable to provide J.C. with the necessary supervision and medical care, as was evidenced by J.C. being diagnosed as "Failure to Thrive based on [Father's] failure to provide appropriate food and nutrition" to J.C. Appellant's App. p. 21. The amended CHINS petition further alleged that J.C.'s physical or mental condition was seriously endangered because Father had previously been convicted of child molestation. On

---

[1] The termination of the parental rights of J.C.'s mother is not at issue in this appeal.

2

January 6, 2010, the juvenile court found J.C. to be a CHINS.

On March 10, 2010, DCS filed a petition seeking the termination of Father's parental rights to J.C. On May 2, 2011, the juvenile court conducted an evidentiary termination hearing at which Father appeared and was represented by counsel. During the termination hearing, DCS provided a plan for the permanent care and adoption of J.C. On June 28, 2011, the juvenile court terminated Father's parental rights to J.C. Father now appeals.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

3

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
> > (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
> > (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
> > (iii) the child has been removed from the parent and has been under the

4

supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b) (2009).[2] Specifically, Father claims that DCS failed to establish that either (1) the conditions that resulted in the children's removal or the reasons for placement outside of his care will not be remedied; or (2) the continuation of the parent-child relationship posed a threat to the children's well-being.

## A. Conditions Resulting in Removal Not Likely to be Remedied

In arguing that DCS failed to establish by clear and convincing evidence that the conditions resulting in J.C.'s removal from his care will not be remedied and that the continuation of the parent-child relationship poses a threat to J.C., Father fails to acknowledge that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the

---

[2] We note that during the pendency of this action, Indiana Code section 31-35-2-4(b)(2)(B) was amended to read as follows:
(B) that one (1) of the following is true:
(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, be adjudicated a child in need of services[.]
Despite the addition of another criteria which DCS may allege in a termination petition, we will apply the version of the statute that was in effect at the time DCS filed its petition to terminate Father's parental rights.

5

disjunctive, the juvenile court need only find *either* that the conditions resulting in removal will not be remedied *or* that the continuation of the parent-child relationship poses a threat to the children. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied.* Therefore, "where, as here, the trial court specifically finds that there is a reasonable probability that the conditions which resulted in the removal of the child would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for [DCS] to prove or for the trial court to find that the continuation of the parent-child relationship poses a threat to the child." *In re S.P.H.*, 806 N.E.2d at 882. In order to determine that the conditions will not be remedied, the juvenile court should first determine what conditions led DCS to place J.C. outside of Father's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *Id.*

When assessing whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside her parent's care will not be remedied, the juvenile court must judge the parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can

6

reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court found that DCS presented sufficient evidence to prove that the conditions that resulted in J.C.'s removal from Father's care were not likely to be remedied, and upon review, we conclude that the juvenile court's finding to this effect is supported by the record. The record reveals that Father could not describe J.C.'s extensive medical needs and did not know when J.C. was born or how old she was. The record further reveals that Father had not seen J.C. in approximately six months, and his last interaction with J.C. had been unauthorized. In addition, Father had not had consistent communication with DCS Case Manager Christy Skie about J.C. during the pendency of the CHINS and TPR proceedings. Father testified that he had not had a child in his care since the "80's" and admitted that he was convicted of child molestation in 1992. Tr. p. 22.

During the evidentiary hearing, Father asserted that his prior child molestation conviction should not be held against him because he "made a mistake back in [the] day" and he "did the time for it." Tr. p. 30. Father also testified that his parental rights should not be terminated because he had secured steady employment making approximately $400 per week and housing in a small room in a motel located out "by the Merry-Go-Round." Tr. p. 21. Father, however, failed to provide the court with documentation supporting his testimony regarding his employment status and housing arrangement.

With respect to Father's employment status and housing, DCS presented evidence that Father had, prior to the termination hearing, declined to share his employment status with

7

Case Manager Skie, and had told Case Manager Skie and Jill Northerner, the court-appointed special advocate ("CASA") assigned to the case, that he was homeless. With respect to services, Case Manager Skie testified that Father initially agreed to complete parenting classes, but did not do so, and that the only services that Father participated in were inconsistent drug screens. Case Manager Skie testified that she believed that Father's parental rights should be terminated because he "has not shown an ability to provide care for [J.C.], let alone maintain stable housing or contact with [DCS] to cooperate with any services whatsoever." Tr. p. 43. Case Manager Skie further testified that she did not think that Father could meet J.C.'s substantial medical and developmental needs.

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in J.C.'s removal from Father's care will not be remedied. It was within the province of the juvenile court, as the finder of fact, to minimize any contrary evidence of changed conditions in light of its determination that Father's failure to provide a stable and drug free living environment which led to J.C.'s removal was unlikely to change. *See In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*.

Moreover, contrary to Father's claim that the juvenile court did not "have the basis to completely disbelieve and disregard" Father's contradictory testimony regarding employment and housing, Appellant's Br. p. 8, it is well-established that the juvenile court, acting as a trier of fact, was not required to believe Father's testimony. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson*

8

*v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Father's claim effectively amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

Under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in J.C.'s removal would not be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997). Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to the children's well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and BARNES, J., concur.