**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRENT C. VIAN**
Nakos & Vian
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Central Administration
Indianapolis, Indiana

**MITCH GERBER**
Allen County DCS Office
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF Cord. L., Cort. L., & Cha. L., MINOR CHILDREN, AND THEIR MOTHER, C.H., | ) ) ) ) ) |
| C.H., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 02A03-1202-JT-101 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause Nos. 02D08-1002-JT-102, 02D08-1002-JT-104, 02D08-1012-JT-484

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent C.H. ("Mother") appeals the juvenile court's order terminating her parental rights to Cord. L., Cort. L., and Cha. L. (collectively, "the children"). Mother alleges that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of her parental rights. Concluding that the evidence was sufficient to support the termination of Mother's parental rights, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has three children, Cord. L., Cort. L., and Cha. L., at issue in this appeal.[1] Cord. L. and Cort. L. were born on December 5, 2008. DCS first became involved with Cord. L. and Cort. L. when notified of potential child abuse after Cord. L. was diagnosed as having suffered a skull fracture, a fractured rib, a broken femur, and a fracture to his wrist on January 22, 2009. That same day, Cord. L. and Cort. L. were removed from Mother's care. On or about January 23, 2009, DCS filed a petition alleging that Cord. L. and Cort. L. were children in need of services ("CHINS").

On February 10, 2009, DCS filed an amended petition alleging that Cord. L. and Cort. L. were CHINS. DCS filed a second amended petition that Cord. L. and Cort. L. were CHINS on May 21, 2009. In addition to stating the above-mentioned injuries suffered by Cord. L., the second amended CHINS petition alleged that Cord. L.'s and Cort. L.'s

---

[1] The termination of the parental rights of the children's father is not at issue in this appeal.

"physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of [Mother] to supply [Cord. L. and Cort. L.] with necessary food, clothing, shelter, medical care, education or supervision." DCS Exhibit 10. The second amended CHINS petition further alleged that Cord. L.'s injuries "would not ordinarily be sustained except for the act or omission of a parent, guardian, custodian, or caregiver." DCS Ex. 10. Mother admitted to the allegations contained in the second amended CHINS petition. In light of Mother's admission, the juvenile court determined that Cord. L. and Cort. L. were CHINS and ordered Mother to complete certain services. On July 16, 2009, the juvenile court found that Mother had not demonstrated an ability to benefit from services or maintained regular contact with DCS.

Cha. L. was born on December 22, 2009. Cha. L. was removed from Mother's care on December 24, 2009. DCS argued that removal was reasonable in light of the fact that Mother was non-compliant with the services ordered in the CHINS proceedings relating to Cord. L. and Cort. L. Mother admitted and the juvenile court determined that Cha. L. was a CHINS on January 25, 2010.

On February 18, 2010, DCS filed petitions seeking the termination of Mother's parental rights to Cord. L. and Cort. L. On January 3, 2011, DCS filed a petition seeking the termination of Mother's parental rights to Cha. L. On February 15 and 16, 2011, March 14, 2011, April 27, 2001, September 27, 2011, and November 15, 2011, the juvenile court conducted an evidentiary termination hearing at which Mother appeared and was represented by counsel. During the termination hearing, DCS introduced evidence relating to Mother's

failure to remedy the conditions leading to the children's removal. DCS also provided evidence indicating that the children's Guardian Ad Litem ("GAL") believed that the termination of Mother's parental rights was in the children's best interests, and its plan for the permanent care and treatment of the children was adoption. On February 14, 2012, the juvenile court terminated Mother's parental rights to the children. Mother now appeals.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

Mother contends that the evidence presented at the evidentiary hearing was

insufficient to support the juvenile court's order terminating her parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
>> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>> (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>> (iii) the child has been removed from the parent and has been under the

5

supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011). Specifically, Mother claims that DCS failed to establish that the conditions that resulted in the children's removal will not be remedied. In making this claim, Mother argues that she obtained housing and employment as instructed by the juvenile court and a vast majority of her supervised visits with the children were "good visits." Appellant's Br. p. 8.

**A. Conditions Resulting in Removal Not Likely to be Remedied**

Initially we note that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that the conditions resulting in removal will not be remedied *or* that the continuation of the parent-child relationship poses a threat to the children. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, "where, as here, the trial court specifically finds that there is a reasonable probability that the conditions which resulted in the removal of the child[ren] would not be remedied, and there is sufficient evidence in the record supporting the trial court's

6

conclusion, it is not necessary for [DCS] to prove or for the trial court to find that the continuation of the parent-child relationship poses a threat to the child[ren]." *In re S.P.H.*, 806 N.E.2d at 882. In order to determine that the conditions will not be remedied, the juvenile court should first determine what conditions led DCS to place the children outside of Mother's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *Id.*

When assessing whether a reasonable probability exists that the conditions justifying the children's removal and continued placement outside Mother's care will not be remedied, the juvenile court must judge the parent's fitness to care for her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court found that DCS presented sufficient evidence to prove that the conditions that resulted in the children's removal from Mother's care were not likely to be remedied, and upon review, we conclude that the juvenile court's finding to this effect is

7

supported by the record. The record reveals that Mother did not successfully complete the home-based services offered by DCS. Mother's participation in home-based services was placed on hold on four different occasions before being terminated altogether for lack of participation. Mother's individual counseling was also terminated because of Mother's lack of contact with the service provider. In addition, Mother did not successfully complete the offered parenting instruction classes and has failed to demonstrate that she has benefited from any of the services provided.

The record further reveals that Mother has not progressed beyond supervised visitation and, consequently, has not demonstrated that she could safely parent the children outside of a controlled environment. The record indicates that Mother fell asleep during some visitation sessions, failed to properly administer medication or therapies to the children, and was not attentive to the children's needs. Notably, none of the service providers who worked with Mother in any capacity could recommend that the children be returned to Mother's care.

Mother also failed to complete certain tasks as ordered by the juvenile court. Specifically, Mother failed to maintain regular contact with DCS and to timely notify DCS of changes in her housing and employment as instructed by the juvenile court. Mother failed to participate in the children's doctor's appointments, attending only one of roughly forty-five doctor's appointments since August of 2009. Mother also failed to provide the children with sufficient clothing and to obtain her diploma or GED. In addition, Mother failed to maintain independent housing and suitable employment. As of the last date of the termination hearing, Mother resided with maternal grandmother. Mother was aware, however, that maternal

8

grandmother's home was not a suitable placement for the children because of maternal grandmother's prior contacts with DCS. Further, while Mother testified at the termination hearing that she had recently obtained employment as a receptionist, Mother's employment history consisted of short periods of employment at numerous jobs as well as periods of unemployment.

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in the children's removal from Mother's care will not be remedied. It was within the province of the juvenile court, as the finder of fact, to minimize any contrary evidence of changed conditions in light of its determination that Mother's failure to provide a safe and stable living environment which led to the children's removal was unlikely to change. *See In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*.

Moreover, contrary to Mother's claim that the evidence showed that she had many "good" visits with the children and had finished high school and obtained housing and employment as instructed by the juvenile court, Appellant's Br. p. 8, it is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Mother. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Mother's claim effectively amounts to an invitation for this court to reassess

9

witness credibility and reweigh the evidence, which, again, we will not do.  *See In re S.P.H.*, 806 N.E.2d at 879.

Under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in the children's removal would be remedied.  *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997).  Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we further conclude that DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

The judgment of the juvenile court is affirmed.

ROBB, C.J., and BAKER, J., concur.