# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Miller
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.D., Minor Child, and Her Father, B.D.,

B.D.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

April, 17, 2015

Court of Appeals Case No. 49A02-1409-JT-631

Appeal from the Marion Superior Court
The Honorable Marilyn A. Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1402-JT-89

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent B.D. ("Father") appeals the juvenile court's order terminating his parental rights to A.D. (the "Child"). On March 13, 2013, the Department of Child Services ("DCS") filed a petition alleging that the Child was a child in need of services ("CHINS"). The CHINS petition stated that DCS became involved with the family and the Child was removed from her parents' care after the Child's mother tested positive for cocaine both during her pregnancy and at the time of the Child's birth. The CHINS petition further stated that Father had failed to demonstrate either the ability or a willingness to appropriately parent the Child. With respect to Father, the Child was adjudicated to be a CHINS on May 3, 2013. Father was subsequently ordered to participate in certain services. Father failed to do so.

[2] DCS filed a petition seeking the termination of Father's parental rights to the Child on February 19, 2014. Following a two-day evidentiary hearing, the juvenile court issued an order terminating Father's parental rights to the Child. On appeal, Father contends that DCS did not provide sufficient evidence to support the termination of his parental rights. We affirm.

# Facts and Procedural History

[3] Father is the biological father of the Child, who was born on March 9, 2013.[1] DCS initially became involved with the Child after the Child's mother, who had an extensive history of substance abuse, tested positive for cocaine both during her pregnancy and at the time of the Child's birth.

[4] DCS filed a petition on March 13, 2013, alleging that the Child was a CHINS. With regard to Father, DCS alleged that Father "has not successfully demonstrated the ability and willingness to appropriately parent [the Child], and he is unable to ensure [the Child]'s safety and well being while in the care and custody of [Mother]." State's Ex. 2. Father failed to appear at hearings on DCS's CHINS petition on both March 13, and April 5, 2013. The juvenile court set the matter for a fact-finding hearing on May 3, 2013. Father did not appear for the May 3, 2013 fact-finding hearing.

[5] At the conclusion of the May 3, 2013 fact-finding hearing, the juvenile court adjudicated the Child to be a CHINS with regard to Father. Father appeared for a hearing on August 2, 2013, after which the juvenile court issued a dispositional order and parental participation decree in which it ordered Father to (1) participate in supervised visitation with the Child; (2) participate in home-based counseling; (3) complete a parenting assessment; and (4) submit to random drug screens. The juvenile court advised Father that failure to participate in the court-ordered services could lead to the termination of his

---

[1] The termination of the Child's mother's parental rights is not at issue in this appeal.

parental rights to the Child. Father agreed to participate in the court-ordered services. Father, however, failed to do so.

[6] On February 19, 2014, DCS filed a petition seeking the termination of Father's parental rights to the Child. The juvenile court conducted an evidentiary termination hearing on July 30, and August 4, 2014, during which Father was represented by counsel. Father, however, failed to appear for the proceedings on July 30, 2014.

[7] During the termination hearing, DCS introduced evidence relating to continued concerns regarding Father's apparent disinterest and unwillingness to properly care for the Child. Specifically, DCS introduced evidence which demonstrated that Father repeatedly failed to visit with the Child or to participate in the services offered by DCS. Father had not seen the Child since August 16, 2013, and the juvenile court heard evidence that the Child would not even recognize Father. DCS also introduced evidence indicating that the termination of Father's parental rights was in the Child's best interest and that its plan for the permanent care and treatment of the Child was adoption. Father, for his part, presented evidence which he claimed demonstrated that he was willing and able to care for the Child despite his complete failure to participate in the court-ordered services. Following the conclusion of the termination hearing, the juvenile court issued an order terminating Father's parental rights to the Child. Father now appeals.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his child. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable

inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
>
> > (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>
> > (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>
> > (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the

home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)  that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)  termination is in the best interests of the child; and

(D)  there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011).  Father does not dispute that DCS presented sufficient evidence to support the first and fourth elements set forth in Indiana Code section 31-35-2-4(b).  Father, however, claims that DCS failed to establish the second and third elements that are required to be proven before the juvenile court could order the involuntary termination of his parental rights. Specifically, Father argues that DCS failed to establish that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Child.  Father also argues that DCS failed to establish that termination of his parental rights is in the Child's best interests.

## A. Whether DCS Presented Sufficient Evidence to Prove the Second Element That is Required to be Proven Before a Court May Order the Involuntary Termination of One's Parental Rights

On appeal, Father argues that DCS failed to establish by clear and convincing evidence that there is a reasonable probability that the continuation of the parent-child poses a threat to the well-being of the Child.

It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that (1) the conditions resulting in removal from or continued placement outside the parent's home will not be remedied, (2) the continuation of the parent-child relationship poses a threat to the child, *or* (3) the Child has been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court concludes either that (1) there is a reasonably probability that the conditions resulting in the Child's placement outside the parent's home will not be remedied, (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Child, or (3) the Child has been adjudicated a CHINS on two separate occasions, and there is sufficient evidence in the record supporting the juvenile court's conclusion, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See generally In re S.P.H.*, 806 N.E.2d at 882 (providing that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the

disjunctive, DCS need only prove and the juvenile court need only find that one of the factors listed in that sub-section is true).

[15] Initially we note that the trial court concluded both that (1) there is a reasonably probability that the conditions resulting in the Child's placement outside of Father's home will not be remedied and (2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Child. With respect to its conclusion that there is a reasonable probability that the conditions resulting in the Child's placement outside Father's home would not be remedied, the juvenile court stated that

> There is a reasonable probability that the conditions that result in [the Child]'s removal and continued placement outside the home will not be remedied by her father. Due to his lack of effort in services, his ability to appropriately parent remains unknown. His indifference toward [the Child], as exhibited by not visiting her or asking about her, demonstrates that he is unwilling to parent.

Appellant's App. p. 12. Father does not challenge this conclusion. However, we will nonetheless address the merits of Father's claim that the evidence is insufficient to sustain the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to the well-being of the Child.

[16] In determining whether the continuation of a parental relationship poses a threat to a child's well-being, a juvenile court should judge a parent's fitness to care for his child as of the time of the termination proceeding, taking into consideration evidence of changed conditions. *Bester*, 839 N.E.2d at 152. However, the court must also consider a parent's habitual pattern of conduct to

determine whether there is a substantial probability of future neglect or deprivation. *Id.* Again, a court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *See In re T.F.*, 743 N.E.2d at 773. Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003) (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

[17] Here, the juvenile court determined that the continuation of the parent-child relationship posed a threat to the Child's well-being. In making this determination, the juvenile court stated that

> Continuation of the parent-child relationship poses a threat to [the Child]'s well-being in that it would pose as a barrier to obtaining permanency for her through an adoption into the only home she has known when her father has demonstrated [that] he is not willing to offer her permanency.

Appellant's App. p. 12. In support of its determination, the juvenile court found as follows:

> 1. [Father] is the father of [the Child], a minor child born on March 9, 2013.
>
> ****
>
> 3. A [CHINS petition] was filed on [the Child] on March 13, 2013, under Cause Number 49D091303JC009639 on allegations that her mother tested positive for marijuana and cocaine throughout her pregnancy with [the Child], having an extensive substance abuse

history. Allegations against [Father] included he had not demonstrated the ability and willingness to appropriately parent and he was unable to ensure [the Child]'s safety while in the care of her mother.

4. [The Child] was ordered detained and placed outside the home at the Initial Hearing held on March 13, 2013. [Father] failed to attend the hearing.

****

6. [The Child] was found to be a child in need of services as to her father on May 3, 2013.

7. The ChINS Court proceeded to disposition on May 3, 2013, at which time [the Child]'s placement continued outside the home. She had been removed for at least six (6) months prior to this termination action being filed on February 19, 2014.

8. At disposition, the Court ordered no services for [Father] until he made himself available to the Court.

9. [Father] appeared in court for the first time on August 2, 2013, at which time disposition was modified to order [Father] to participate in a parenting assessment, home based services and random screens.

10. [Father] agreed to participate in services.

11. [Father] attended one ChINS hearing. He was incarcerated for approximately three months of the eleven months between the ChINS filing and the Permanency Hearing.

12. To assess needs and family functioning, home based therapy and a parenting assessment were referred.

13. Therapy was referred four times. [Father] failed to complete a full intake.

14. Three parenting assessments were referred. [Father] failed to complete an assessment.

15. Random drug screens were referred to assess and monitor any treatment needs.

16. [Father] failed to undergo random screens through Mosaic Recovery.

17. [Father] had an "on and off" relationship to [the Child]'s mother who was still using and was noncompliant in services. [Father] also

admitted to the family case manager that he would test positive in October of 2013, and testified he had smoked marijuana in 2014.

18. [Father] may have visited with his daughter a few times in March of 2013. He last exercised his parenting time in August of 2013 when he left early.

19. Parenting time was suspended for [Father] in November of 2013 until he began participating in services. He failed to do so.

20. Since his one parenting time session with [the Child], he has not requested further visits or enquire[d] as to her well-being.

21. [Father] blamed his lack of participation on his employment.

22. The plan for permanency was changed from reunification to adoption on February 7, 2014, with the Court finding that [Father] had not done any random drug screens, failed to complete a parenting assessment or home based counseling, and tested positive for marijuana and opiates when the family case manager administered an oral drug swab in October of 2014.

23. [The Child] has resided in the same foster home since her release from the hospital after birth. She has a younger sibling residing in the home which is pre-adoptive.

24. [The Child] has special needs which are being met by her caregiver through physical and developmental therapy.

Appellant's App. pp. 11-12. In light of these findings, the juvenile court concluded that DCS established by clear and convincing evidence that the continuation of the parent-child relationship posed a threat to the Child's well-being.

[18] Father does not challenge the above-stated findings of fact on appeal "as they were supported by the evidence presented." Appellant's Br. p. 11. Rather, Father argues that the above-stated findings do not support the juvenile court's conclusion that the continuation of the parent-child relationship posed a threat

to the Child's well-being. In support of this argument, Father refers to his testimony which he claims demonstrates that he was able to provide shelter and had the financial resources to provide food, clothing, care, and nurturing for the Child. Father also claims that the record reflects that the Child was never harmed in Father's care or his home and that service providers indicated that they never saw Father with the Child.

[19]   It is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Father. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Father's challenge to the sufficiency of the evidence to support the conclusion of the juvenile court effectively amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879. When considered as a whole, we conclude that the juvenile court did not err in concluding that continuation of the parent-child relationship posed a threat to the Child's well-being.

# B. Whether DCS Presented Sufficient Evidence to Prove the Third Element That is Required to be Proven Before a Court May Order the Involuntary Termination of One's Parental Rights

[20] Father also contends that DCS failed to prove by clear and convincing evidence that termination of his parental rights was in the Child's best interests. We are mindful that in considering whether termination of one's parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id*. Furthermore, this court has previously determined that the testimony of the case worker or Guardian Ad Litem ("GAL") regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id*.; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[21] Here, the testimony establishes that the Child has a need for permanency and stability and that the termination of Father's parental rights would serve the Child's best interests. Family Case Manger ("FCM") Phyllis Clemons testified that she believed that the termination of Father's parental rights was in the Child's best interests. Specifically, FCM Clemons testified that she believed that termination of Father's parental rights was in the Child's best interests because "she deserves … permanency, she deserves a safe, secure, stable home environment. She deserves that." Tr. p. 79. FCM Clemons testified that permanency for a child "is a safe, secure, stable home with family, love, um,

unconditional commitment and lifelong support" and that permanency is important for the Child "[b]ecause it provides stability." Tr. pp. 75-76.

[22] Although Father initially agreed to complete all of the services ordered by the juvenile court, he has "made no progress in [completing] the services ordered." Tr. p. 78. In fact, all of the services were eventually terminated unsuccessfully due to Father's lack of participation. When asked by FCM Clemons about his lack of participation, Father repeatedly claimed that he could not visit with the Child or complete services because "he'd been busy working." Tr. p. 64. Further, although Father claimed to be employed and capable of providing financial support for the Child, Father has never provided FCM Clemons with proof of employment and has never provided financial support for the Child. FCM Clemons indicated that she has concerns about Father's ability to provide the Child with stability in light of Father's lack of compliance in services and lack of engagement in visitation.

[23] FCM Clemons also expressed concerns about Father's ability to provide for the Child's special needs. The Child suffers from some developmental issues, including issues with her muscle tone and her speech. As of the date of the evidentiary hearing, she was participating in physical and developmental therapy. Father had not demonstrated any ability—or desire—to meet the Child's special needs regarding her speech and developmental delays.

[24] In addition, the Child's GAL, Vera Stewart, testified that she believed that adoption "is the right thing to happen for [the Child]." Tr. p. 104. GAL

Stewart further testified that she did not believe that Father should be given additional time to complete services "[b]ecause he's had enough time to demonstrate [that] he wanted his child or interaction with her or any of the programs that have been provided for him and he hasn't done anything." Tr. pp. 104-05.

[25] Father concedes that he has not visited with the Child since August 16, 2013, and that the Child has bonded with her foster mother. The record also establishes that Father has failed to verify that he could provide the Child with a suitable living environment and that he made no attempt to seek to have the Child placed in his care or check on the Child's welfare. Nevertheless, Father argues that "his blood relationship with [the Child], his establishment of paternity, his desire to parent her, and his ability to parent her, gives him a superior right that should not so easily be revoked." Appellant's Br. p. 12. Father, however, also concedes that "his desire to continue a parent-child relationship with [the Child] poses a barrier to [the Child] obtaining permanency through an adoption." Appellant's Br. p. 11.

[26] Despite Father's claim to the contrary, the record demonstrates that throughout DCS's period of involvement with the Child, Father has displayed, at best, indifference toward the Child. This indifference is evidenced by his claim that he was too busy to visit the Child or to participate in services. The juvenile court did not have to wait until the Child was irreversibly harmed such that her physical, mental, and social development was permanently impaired before terminating Father's parental rights. *See In re C.M.*, 675 N.E.2d at 1140. In

light of the testimony of FCM Clemons and GAL Stewart, considered with Father's apparent indifference toward the Child and his failure to successfully complete the court-ordered services, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Father's parental rights is in the Child's best interests. Again, Father's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

# Conclusion

[27] Having concluded that the evidence is sufficient to support the juvenile court's order terminating Father's parental rights to the Child, we affirm the judgment of the juvenile court.

[28] The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.